Shella Alcabes, Cal Bar No. 267551
salcabes@freedomfoundation.com
Ravi Prasad, Cal Bar No. 355175
rprasad@freedomfoundation.com
Freedom Foundation
P.O. Box 552
Olympia, WA 98507
Telephone: (360) 956-3482

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **LEVI CHIN** and **TERESA PRECIADO**, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**EVERGREEN FREEDOM FOUNDATION**,<br><br>Defendant. | Case No.: 5:24-cv-01473-KK-SHK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 (ANTI-SLAPP)**<br><br>Hearing Date: December 12, 2024<br>Time: 9:30 a.m.<br>Judge: Hon. Kenly K. Kato<br>Place: 3470 12th Street 3rd Floor, Courtroom: 3, Riverside, CA 92501<br><br>Action Filed: July 15, 2024<br>First Am. Compl. Filed: August 9, 2024 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 12, 2024 at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 3, of the above-entitled court, located at 3470 12th Street, 3rd Floor, Courtroom 3, Riverside, CA

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

i

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

92501, defendant Evergreen Freedom Foundation ("Foundation" of "Defendant")
will and hereby does move this Court, pursuant to California Code of Civil
Procedure § 425.16, for an order dismissing the Complaint brought by Plaintiffs Levi
Chin and Teresa Preciado on behalf of themselves, and all other similarly situated
("Plaintiffs"), in its entirety, with prejudice.

Plaintiffs' Complaint, and cause of action, arises directly from the Freedom
Foundation's efforts to inform public employees of their First Amendment rights.
To do so, the Foundation sent an email and mailer to certain public employees asking
them their opinions on Teamsters, Local 1932 and informing them that they have
constitutional rights regarding union membership. Because all of Plaintiffs' claims
are based on the Foundation's free speech and its conduct in furtherance of the
exercise of free speech in connection with matters of public interest, they fall within
the broad scope of California Code of Civil Procedure § 425.16 ("anti-SLAPP"). *See*
Memorandum of Points and Authorities, Section IV. Consequently, the burden shifts
to the Plaintiffs to establish a probability that he will prevail on each of his claims.
See C.C.P. § 425.16(6)(1); Memorandum, Section III.

1.     Plaintiffs' First Cause of Action for violation(s) of the California Anti-
Spam Law should be dismissed for each of the following reasons:

a.  The April 25, 2024 email is a communication made in furtherance of
the Foundation's exercise of its free speech rights.

b.  The April 25, 2024 email's subject line is not misleading.

c.  Plaintiffs did not properly plead that the April 25, 2024 email is a
commercial email advertisement, nor can it properly pled as one.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

This Motion is based on the Notice; Memorandum of Points and Authorities; and attached Declarations of Orlando Ibarra and Shella Alcabes; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place September 27, 2024, during which Plaintiffs' counsel did not participate in good faith. *See*, Alcabes Decl. ¶ 3.

For all reasons stated, the Foundation respectfully requests that this Court strike Plaintiffs' First Cause of Action in its entirety, with prejudice, and further requests this Court to find that the Foundation is entitled to recover its reasonable attorneys' fees and costs incurred in defending against Plaintiffs' meritless claims.[1]

Dated: October 22, 2024

s/*Shella Alcabes*
Shella Alcabes, Cal Bar No. 267551
Ravi Prasad, Cal Bar 355175
Freedom Foundation
P.O. Box 552
Olympia, Washington 98507
Tel: (360) 956-3482
*Attorneys for Defendant*

---

[1] The SLAPP statute mandates that a prevailing party on a SLAPP motion "shall" recover attorneys' fees and costs. C.C.P. § 425.16(c). If the Court grants this Motion, Defendant will file a separate noticed motion to recover the fees and costs that is has incurred in connection with its SLAPP Motion. *E.g.*, *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-1132 (2001); *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1209 (9th Cir. 2005) ("California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court.").

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

I.   INTRODUCTION ...........................................................................................1

II.  STATEMENT OF FACTS ..............................................................................2

III. LEGAL STANDARD FOR ANTI-SLAPP .....................................................5

IV. PLAINTIFFS' CLAIM IS SUBJECT TO DISMISSAL PURSUANT TO
     CALIFORNIA'S ANTI-SLAPP STATUTE ....................................................6

     A.   Plaintiffs' Claim Arises from the Foundation's Exercise of Its Free Speech
          Rights .......................................................................................................6

          1. Plaintiffs' claim falls under Section 425.16 because the April 25, 2024
             Emails are conduct in furtherance of the Foundation's advocacy
             concerning issues of public interest. ..................................................8

     B.   Plaintiff Cannot Show a Probability of Prevailing on the Merits of Its
          Anti-SPAM Claim ...................................................................................10

          1. No reasonable person would view the April 25, 2024 Email as
             misleading in light of the case law and a common sense reading of the
             subject line in the context of the email..............................................11

             a.   No reasonable person would be misled by reading the subject line
                  and email ........................................................................................11

                  i. The email is clearly not endorsed or solicited by Teamsters ........11

                  ii. The subject line accurately describes the message in the body of
                      the email ......................................................................................14

             b.   The April 25, 2024 Email does not come close to what courts
                  consider is misleading in case law ................................................16

          2. The April 25, 2024 Email is not a commercial email advertisement
             because the Foundation is informing employees of their First
             Amendment rights and offering opt-out assistance free of charge. ......19

V.   CONCLUSION ..............................................................................................23

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

# TABLE OF AUTHORITIES

**Cases**

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
  622 F. Supp. 2d 935 (N.D. Cal. Apr. 17, 2009) ................................................17

*Asis Internet Servs. v. Member Source Media, LLC*,
  2010 WL 1610066 (N.D. Cal. Apr. 20, 2010).............................................. 13, 17

*Bassi v. Bassi*,
  101 Cal. App. 5th 1080 (2024) .........................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................6, 20

*Bontrager v. Showmark Media LLC*,
  2014 WL 12600201 (C.D. Cal. June 20, 2014)...............................................19

*Church of Scientology v. Wollersheim*,
  42 Cal. App. 4th 628 (1996) ............................................................................8

*Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*,
  34 Cal.4th 733 (2004)....................................................................................21

*Dubac v. Itkoff*,
  101 Cal. App. 5th 540 (2024).........................................................................8

*Hypertouch, Inc. v. ValueClick, Inc.*,
  192 Cal. App. 4th 805 (2nd Dist. 2011) ........................................................18

*In re Outlaw Labs., LP Litig.*,
  352 F. Supp. 3d 992 (S.D. Cal. 2018) ..............................................................6

*Janus v. Am. Fed'n. of State, Cnty., and Mun. Emps., Council 31*,
  585 U.S. 878 (2018) .......................................................................................2

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) .....................................................................6, 10

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

v

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

*People v. Farell*,
    28 Cal.4th 381 (2002) ................................................................21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .............................................5, 6

*Rosolowski v. Guthy-Renker LLC*,
    230 Cal. App. 4th 1403 (2014) ................................... 11, 18, 19

*Rosolowski v. Zoosk, Inc.*,
    2013 WL 974547 (Oct. 17, 2013) .......................................18

*Sipple v. Foundation For Nat. Progress*,
    71 Cal. App. 4th 226 (1999) ...............................................7

*Tagged, Inc. v. Doe 1 through 10*,
    2010 WL 370331 (N.D. Cal. Jan. 25, 2010) ................. 16, 17

*Wilcox v. Superior Ct.*,
    27 Cal. App. 4th 809 (1994) ...............................................7

**Statutes**

Cal. Bus. & Prof. Code § 17529.1(c) .................................... 19, 20, 21, 22

Cal. Bus. & Prof. Code § 17529.5 ..................................... 5, 17, 20, 21

Cal. Bus. & Prof. Code § 17529.5(a)(3) ......................................... *passim*

Cal. Civ. Proc. Code § 425.16(a) ....................................................5

Cal. Civ. Proc. Code § 425.16(b)(1) ..............................................5, 6

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ........................................22

https://bushgottlieb.com/...........................................................1

https://sco.ca.gov/ppsd_empinfo_demo.html .............................9

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

https://thehill.com/business/4649705-labor-unions-pro-palestine-protesters/ ..........9

https://www.tabletmag.com/sections/news/articles/how-teachers-union-broke-
public-education..............................................................................................9

The Oxford English Reference Dictionary (2d ed. 1996).......................................22

Webster's 3d New Int'l. Dictionary (2002) ...........................................................21

**Rules**

Fed. R. Civ. P. 12(b)(6).........................................................................................6

Fed. R. Civ. P. 8(a)(2) .........................................................................................20

**Constitutional Provisions**

Cal. Const. art. I, § 3 ..........................................................................................10

U.S. Const. amend. I ...........................................................................................10

Cal. Const. art. I, § 3 ..........................................................................................10

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises entirely from the Freedom Foundation's ("Foundation") efforts to inform public employees of their First Amendment rights. To do so, the Foundation sent an email to several public employees asking them their opinions on their local union, Teamsters Local 1932, and informing them that they have constitutional rights regarding union membership. This knowledge helps the Foundation contact those employees that want to opt out of Teamsters Local 1932 membership and avoid contacting those that are happy with their union. Bush Gottlieb, a law firm that often defends public sector unions against constitutional claims made by public employees,[2] brought this suit in order to silence the Foundation from speaking to public employees about their rights.

Plaintiffs' argument centers around the following allegation: the Foundation sent an email that violates California Business and Professions Code § 17529.5(a)(3) ("Section 17529.5") because (1) the subject line would mislead a reasonable person about whom the email is from and (2) because the subject line is misrepresentative of a material fact regarding the contents or subject matter of the email. However, Plaintiffs fail to properly allege why a reasonable person would assume when reading the subject line and email that it came from Teamsters. Plaintiffs also fail to allege what else, if anything, is misleading about the subject line. Even a cursory

---

[2] The top quote on the Bush Gottlieb website reads: "For decades we have represented private and public sector unions." https://bushgottlieb.com/ (last visited September 19, 2024).

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

1

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

review of the email itself makes it abundantly clear that the subject line does not mislead the reader about either the identity of the sender or the content of the email. Lastly, Plaintiffs fail to allege the remaining elements of a Section 17529 cause of action.

For all of these reasons, the Foundation respectfully requests that this Court grant the Foundation's Motion, and strike and dismiss Plaintiffs' claim with prejudice.

## II.  STATEMENT OF FACTS

Evergreen Freedom Foundation (the "Foundation") is a non-profit organization engaged in informing public employees of the First Amendment rights regarding union membership, especially as these rights have changed since the 2018 *Janus v. AFSCME* Supreme Court decision.[3] Declaration of Orlando Ibarra ("Ibarra Decl.") ¶ 3. The Foundation did so by emailing several public employees who are members of Teamsters Local 1932 to ask about their experience as members of that union and informing them about their constitutional rights relating to union membership. *Id.* at ¶ 4. By finding out public employees' opinion on Teamsters Local 1932, the Foundation learns which public employees to later contact regarding their First Amendment rights regarding union members, and avoid sending emails to those who are happy with their union. *Id.* at ¶ 5.

The First Amended Complaint ("FAC") alleges that on April 25, 2024, Plaintiffs, who are both public employees and members of Teamsters, Local 1932,

---

[3] *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31,* 585 U.S. 878 (2018)

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

received an email at their public employment email addresses from orlando@optouttoday.com (the "April 25, 2024 Email"). FAC, ¶ 14. The sender's email is not obscured in any way, stating it is "From: Orlando Ibarra <orlando@opttouttoday.com>" at the top of the email. FAC, Ex. A. Immediately below that, the subject line states: "Subject: **Your Experience with Teamsters – Your Voice Matters**." *Id*. (emphasis added). These particular emails included notices that the email originated outside of the organization and that the recipient does not often get emails from orlando@optouttoday.com. *Id*.

The FAC alleges that the April 25, 2024 Email violates California Business & Professions Code § 17529.5(a)(3) ("Section 17529") because the subject line "appeared on its face to be endorsed or solicited by Teamsters" while the email itself "actually intended to advertise the Defendant' [sic] website services in providing instructions and forms for the union member to opt-out of their membership with Teamsters." FAC, ¶ 47. Additionally, the FAC alleges that the "subject line of the emails at issue contained a subject line that was both misrepresentative of the context of the emails' substance and misleading about a material fact regarding the contents or subject matter of the message under California Anti-Spam Law." FAC, ¶ 46.

The body of the email is as follows:

Dear ,

I'll be quick and to the point.

The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues into what they say is a union that does not really represent them. While they just might be

disgruntled members, it is important to highlight that they chose to exercise their constitutional right to do so.

We here at OptOutToday.com are dedicated to informing and empowering those that are disenfranchised by their union. When a union, or any service for that matter, does not benefit you, why should you then have to cough up your hard-earned paycheck to them? Thanks to the Janus decision in 2018, you no longer have to and you have the right to stay in or leave your public sector union.

We are genuinely interested in hearing your side of the story. So, to those that have decided to opt out - what made you leave? Are there things that Teamsters could have done better? Ideally, what are the top 2 things you would like to see change. On the flip side, to those that are still full dues paying members - why do you think some of your coworkers have left? Are you aware of your right to opt out of dues and save you money? What are somethings that Teamsters 1932 has done well?

If you're open to sharing your thoughts, we'd love to hear from you. Your feedback is not only important to us but could also be pivotal for many of your peers contemplating similar decisions.

Please feel free to reach out to us at your convenience or visit OptOutToday.com to know how you can opt out and start saving hundreds per year.
Best,

Orlando

FAC, ¶ 14, Ex. A.


The April 25, 2024 Emails enable the Foundation to learn about how the selected public employees feel about Teamsters Local 1932. Those that are happy with their union can inform the Foundation using the survey. Those that are not happy with Teamsters Local 1932 can utilize the Foundation's optouttoday.com website. FAC, Ex. A.

The FAC contains one other allegation of any relevance. In paragraph 45, Plaintiffs allege that the April 25, 2024 Emails were "'commercial e-mail

Mot. to Dismiss Pursuant to    4
Cal. Code Civ. Proc. § 425.16

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

advertisements'" by formulaically reciting this but offering no explanation as to what way a non-profit's emails asking about public employees' opinions on union membership is in any way "commercial" pursuant to § 17529.5.

The FAC contains a slew of other irrelevant allegations intended to bias the court or reader against the Foundation, while failing to support the underlying cause of action. These allegations are all subject to the Defendant's Motion for Rule 11 Sanctions, served on Plaintiffs' counsel on October 22, 2024, and awaiting the safe-harbor period. Declaration of Shella Alcabes, ("Alcabes Decl.") ¶ 4.

## III. LEGAL STANDARD FOR ANTI-SLAPP

California's anti-SLAPP law permits courts to root out baseless lawsuits aimed at chilling the exercise of free speech—i.e., "strategic lawsuits against public participation." In enacting the anti-SLAPP law, the legislature found "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech" and to that end, mandated that the law "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a). Ninth Circuit courts apply the anti-SLAPP statute in diversity actions like this one. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Courts employ a two-step inquiry to determine if a complaint is subject to a defendant's special motion to strike. First, a defendant must make a prima facie case that a "cause of action against [it] aris[es] from any act of that person in furtherance of [its] right of petition or free speech under the United States Constitution or the California constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). If that showing is made, the burden shifts to the plaintiff at the second

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

5

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

prong of the analysis to "establish[] that there is a probability that the plaintiff will prevail on the claim." *Id.; In re Outlaw Labs., LP Litig*., 352 F. Supp. 3d 992, 1010 (S.D. Cal. 2018). If a plaintiff cannot meet its burden on this second step, the Court should grant the motion to strike. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

Where, as here, "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)," and no discovery is necessary or required before the Court can rule on Defendants' anti-SLAPP motion. *Planned Parenthood*, 890 F.3d at 834 (citation omitted). In construing an anti-SLAPP motion under Rule 12(b)(6), courts accept as true the allegations in the complaint, but are not bound to accept as true a legal conclusion couched as a factual argument, "and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. PLAINTIFFS' CLAIM IS SUBJECT TO DISMISSAL PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE

### A. Plaintiffs' Claim Arises from the Foundation's Exercise of Its Free Speech Rights

Under California's anti-SLAPP law, causes of action "arising from any act of [a defendant] in furtherance of the [defendant's] right of . . . free speech . . . in connection with a public issue" are subject to a special motion to strike. Cal. Civ. Proc. Code § 425.16(b)(1). The anti-SLAPP statue is construed broadly, and, to ensure this, in 1997 the California Legislature added subdivision (e)(4) to protect "any other conduct in furtherance of the exercise of the constitutional right of

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (May 12, 1997, Senate Judiciary Committee Analysis at 32.).[4]

Moreover, while SLAPP suits "masquerade as ordinary lawsuits" the conceptual features which reveal them as SLAPPs are that they are generally meritless suits brought by *large private interests* to deter common citizens from exercising their political or legal rights or to punish them for doing so. *Wilcox v. Superior Ct.*, 27 Cal. App. 4th 809, 816 (1994). Here, this lawsuit masquerades as an anti-SPAM lawsuit brought on behalf of two individuals when in reality, it is brought by Teamsters Local 1932, who contacted their labor law firm, Bush Gottlieb to harass the Foundation for its ardent defense of public employees' rights, and what the FAC incorrectly describes as a "silent political agenda." FAC ¶ 14. This point is further discussed in the Foundation's Rule 11 Motion, to be filed after  21 days of today's date if Defendants fail to withdraw their complaint.

---

[4] It is indisputable that the legislature intended the statute to be extremely broad. "Some courts have failed to understand that this statute covers *any conduct* in furtherance of the constitutional rights of petition and of free speech in connection with a public issue or with any issue of public interest." (June 23, 1997, Assembly Judiciary Committee Analysis 76 [emphasis added]; Senate Third Reading Analysis 80; *see Sipple v. Foundation For Nat. Progress*, 71 Cal. App. 4th 226, 236 (1999) ("the Senate Judiciary Committee expressly amended section 425.16 to mandate a broad interpretation of the statute in reaction to the over-narrow interpretation of *Zhao v. Wong*.").



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1. <u>Plaintiffs' claim falls under Section 425.16 because the April 25, 2024 Emails are conduct in furtherance of the Foundation's advocacy concerning issues of public interest.</u>

Plaintiffs allege only one act the Foundation engaged in – the April 25, 2024 Email. To determine whether the anti-SLAPP statute applies to this email, the court must ask two questions. First, are emails "conduct" and second whether the April 25, 2024 Email concerns a "public issue or an issue of public interest?" The answer to both is resoundingly yes. Emails are considered "conduct" and therefore satisfy the first question. *Bassi v. Bassi*, 101 Cal. App. 5th 1080, 1098 (2024). Second, judges have used five interchangeable and overlapping factors to determine whether something is an issue of public interest. Not each has to be met, but they provide a general guideline for what could be considered "of public interest." *Id.*

1. The statement concerns a person or entity in the public eye;

2. the statement concerns conduct that could directly affect a large number of people beyond the direct participants;

3. the statement concerns a topic of widespread public interest;

4. the issue is of concern to a substantial number of people; or

5. the issue has been the subject of extensive media coverage. (*Id.*)

*Dubac v. Itkoff*, 101 Cal. App. 5th 540, 548–49 (2024). Moreover, "public interest" also includes activities involving private persons and entities, especially when a large, powerful organization may impact the lives of many individuals. *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650 (1996).

There is simply no question that the April 25, 2024 Email, which concerns union membership and what public employees like or dislike about their union, is of

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

8

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

public interest. The FAC itself is full of facts which suggest that the Foundation's email is related to its advocacy on matters of public concern. Plaintiffs allege that the Foundation has a "political agenda to encourage union members to 'stop paying dues' and advising members that they 'have the right to stay in or leave your public sector union." FAC ¶ 14. Plaintiffs also allege that the Foundation has made known its public position on such matters on its website. *Id.* ¶ 16. Plaintiffs further allege that the "Foundation holds itself out as 'a battle tank that's battering the entrenched power of left-wing government union bosses who represent a permanent lobby for bigger government, higher taxes, and radical social agendas." *Id.* Plaintiffs clearly recognize that the Foundation sent the email in furtherance of its advocacy on matters of public concern.

More broadly, public sector unions are an entity in the public eye, particularly recently, when unions have participated in anti-Israel protests.[5] In fact, the issue of union membership and activism has received extensive media coverage even before this past year, when teachers' unions prevented schools from reopening during the COVID-19 pandemic.[6]

Unions represent over 224,500 California citizens that work for the state,[7] and all California citizens have an interest in how many public employees are represented by unions since California citizens pay public employees' salaries. The

---

[5] https://thehill.com/business/4649705-labor-unions-pro-palestine-protesters/; last visited September 19, 2024.
[6] https://www.tabletmag.com/sections/news/articles/how-teachers-union-broke-public-education; last visited September 19, 2024.
[7] https://sco.ca.gov/ppsd_empinfo_demo.html; last visited September 19, 2024.

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Plaintiffs also admit in the FAC that Teamsters Local 1932, the union which is the subject of the April 25, 2024 Email, represents "approximately 14,000 public employees in California." FAC, ¶ 13. Knowing the opinions of public employees' who are represented by Teamsters reveals how effective or ineffective collective bargaining and exclusive representation statutes have been, both for Teamsters members and for the public at large. The FAC is also filed as a class action, indicating that many individuals may be affected by the April 25, 2024 Email.

Lastly, the April 25, 2024 Email was allegedly sent to public employees. FAC, Ex. A. At the very least, California's constitution and the First Amendment permit citizens to petition public employees as their government. *See* U.S. Const. amend. I ("Congress shall make no law…. abridging…. the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"); Cal. Const. art. I, § 3 ("The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good"). The April 25, 2024 Email is conduct concerning an issue of public interest.

## B. Plaintiff Cannot Show a Probability of Prevailing on the Merits of Its Anti-SPAM Claim

Under the second prong of the anti-SLAPP inquiry, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261. Accordingly, Plaintiff's claim must be dismissed if it "presents an insufficient legal basis for [the claim]." *Id.* Here, Plaintiffs cannot establish that there is a reasonable probability

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

10

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

they will prevail on their anti-SPAM claim for two reasons: the April 25, 2024 Email

is not misleading and it is not a commercial email advertisement.

1. <u>No reasonable person would view the April 25, 2024 Email as misleading in light of the case law and a common sense reading of the subject line in the context of the email.</u>

Section 17529.5, subdivision (a)(3), makes it unlawful for a commercial e-mail advertisement to contain "a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1416–17 (2014). Courts view an e-mail's subject line "in conjunction with the body of the e-mail, rather than in isolation." *Id.* at 1418. A subject line is not misleading under the statute if it is not misleading once read in the context of the email itself. *Id.*

> a. *No reasonable person would be misled by reading the subject line and email*

> > i.    The email is clearly not endorsed or solicited by Teamsters

Plaintiffs allege that the April 25, 2024 Email is "misrepresentative" because "the subject line appeared on its face to be endorsed or solicited by the Teamsters, when in fact the email actually is intended to advertise the Defendant' website services in providing instructions and forms for the union member to opt-out of their membership with the Teamsters." FAC, ¶ 47. But no reading of the April 25, 2024 Email's subject line in the context of the email leads to a misunderstanding as to whether Teamsters endorsed or solicited this email.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

First, nothing in the subject line indicates that the email is from Teamsters. "Your Experience with Teamsters – Your Voice Matters" could have been written by a competing union, by San Bernardino County itself that negotiates all of its labor contracts with Teamsters, or from fellow San Bernardino County employees who are considering switching unions. While the subject line does use the word "Teamsters," that alone cannot indicate that the email is from Teamsters or endorsed by Teamsters. By that logic, a political consulting company seeking to survey voters' attitudes and experiences with the Department of Motor Vehicles (DMV) that sends an email with the subject line "Your Experience with the DMV – Your Voice Matters" would be violating Section 17529.5(a)(3). If this court were to hold that the subject line "Your Experience with Teamsters" is misleading because of the word "Teamsters," indicates that the email is from Teamsters or endorsed by them, then no one but Teamsters could ever send an email about Teamsters with the word "Teamsters" in the subject line – an impossible result.

In fact, had the Foundation failed to include the word "Teamsters" in the subject line, *that* would have been misleading, since the email is exactly about Teamsters.

Second, the "from" line makes obvious that the email is from orlando@optouttoday.com and not from a Teamsters email address. In fact, it would be quite ironic for Teamsters to send an email from a domain name indicating that the recipient should "opt out" of Teamsters.

Third, the email itself makes clear that it is not from Teamsters. "Section 17529.5(a)(3) does not turn on whether a subject line is true or false, taken in the

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

12

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

context of the email as a whole or in light of a hyperlinked page. It asks a very different question: whether the subject line might in fact lead a reasonable person to expect something materially different than the message's actual content or subject matter." *Asis Internet Servs. v. Member Source Media*, *LLC*, 2010 WL 1610066, *4 (N.D. Cal. Apr. 20, 2010).

In looking at the email itself, the first full sentences of the email reads "The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues in to what they say is a union that does not really represent them." FAC, Ex. A. Who would the "us" be if the email was from Teamsters?

The first line of the next paragraph clearly states "We here at OptOutToday.com…" The sender is identifying himself as someone from the optouttoday website, and so clearly not from Teamsters.

The third sentence of the email mentions that union members have a "constitutional right" to leave their union. Teamsters has no incentive to provide that information, and any reasonable person would come to that realization. Moreover, the next sentence of the email once again provides that OptOutToday was the sender of the email and that they are "dedicated to informing and empowering those that are disenfranchised by their union." No reasonable person would think that a message so contrary to Teamsters interests would come from Teamsters.

When reading the subject line in the context of the email, it is obvious that it is not from Teamsters. *See, e.g.*, FAC, Ex. A ("We here at OptOutToday.com are

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

dedicated to informing and empowering those that are disenfranchised by their union.")

    ii. The subject line accurately describes the message in the body of the email

  Plaintiffs also vaguely alleges that "[t]he subject line of the emails at issue contained a subject line that was both misrepresentative of the context of the emails' substance and misleading about a material fact regarding the contents or subject matter of the message under California Anti-Spam Law." FAC, ¶ 46. Not only is this allegation vague as to what exactly is misleading (nothing is stated as to what the mismatch is between the subject line and the email itself). The subject line "Your Experience with Teamsters – Your Voice Matters" would lead a reasonable person to expect an email about the recipient's experience with Teamsters. That is precisely the subject matter of the Foundation's email.

  The email could be broken down into two parts. The first part, marked "Part 1" below is accurately described by "Your Experience with Teamsters." The second part, marked "Part 2" below is accurately described by "Your Voice Matters." In fact, had the Foundation not included *both* portions in the April 25, 2024 Email's subject line, then the subject line would have been must *less* accurate when viewing the email as a whole.

**Part 1: Your Experience with Teamsters**

Dear  ,

I'll be quick and to the point.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues into what they say is a union that does not really represent them. While they just might be disgruntled members, it is important to highlight that they chose to exercise their constitutional right to do so.

We here at OptOutToday.com are dedicated to informing and empowering those that are disenfranchised by their union. When a union, or any service for that matter, does not benefit you, why should you then have to cough up your hard-earned paycheck to them? Thanks to the Janus decision in 2018, you no longer have to and you have the right to stay in or leave your public sector union.

We are genuinely interested in hearing your side of the story. So, to those that have decided to opt out - what made you leave? Are there things that Teamsters could have done better? Ideally, what are the top 2 things you would like to see change.

On the flip side, to those that are still full dues paying members - why do you think some of your coworkers have left? Are you aware of your right to opt out of dues and save you money? What are somethings that Teamsters 1932 has done well?

**Part 2: Your Voice Matters**

If you're open to sharing your thoughts, we'd love to hear from you. Your feedback is not only important to us but could also be pivotal for many of your peers contemplating similar decisions.

Please feel free to reach out to us at your convenience or visit OptOutToday.com to know how you can opt out and start saving hundreds per year.
Best,

Orlando

    After reading the subject line in the context of the email, no reasonable person would be misled.

   *b.  The April 25, 2024 Email does not come close to what courts consider is misleading in case law*

There is a sufficient body of case law that adjudicates whether an email subject line was misleading within the meaning of the anti-SPAM statute. The April 25, 2024 Email is nothing like the misleading emails in the caselaw below, and is therefore not misleading as a matter of law.

In the cases below where courts found subject lines to be misleading, they did so because the subject lines completely did not match the content written in the body of the email or were deceptive as to what was required in order to obtain the free gift described in the subject line.

In *Tagged, Inc. v. Doe 1 through 10*, 2010 WL 370331 (N.D. Cal. Jan. 25, 2010), the subject line was misleading because the subject line stated, "you have a message from Tagged," indicating that there was a message from a friend or acquaintance trying to get in touch with the plaintiff over the Tagged website. The text of the email contained messages requesting the recipient click on a link which would take him to a pornographic website. In *Tagged,* the defendant "intended that Tagged users rely on his representation that he was a legitimate *Tagged* user," to trick people into clicking links. *Id.* In such a context, his other email subject lines such as "how are u," and "whassup" reasonably led recipients to believe that the emails were personal messages as opposed to "unsolicited commercial messages with links to an adult dating website." *Id.* at *6. The body of the emails did not illuminate the reality of what the embedded links would direct recipients to. *Id.* at *2. Examples of the contents of email bodies included "you look cool! I have some new pics of me too would love if u could check and rate them," and "what's up;)

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16                           16

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

you sure look nauughty [sic]! I have some new pics of me too would love it you could check and rate them." *Id* (internal quotation marks omitted). The court thus found that the email subject lines violated Section 17529.5. *Id.* at \*7.

In *Asis*, 2010 WL 1610066, at \*5, the subject line was misleading because the emails stated "Wal\*Mart 500 Dollar Gift Card Inside," Second Attempt: $500 Target Gift Card Inside," and "Second Attempt: Victoria's Secret Gift Card Inside," intending to have the recipients open the e-mails by enticing them with free gifts. The emails, however, did not actually contain free gifts or gift cards. Again, body of the email was a direct contradiction of the subject line and therefore misleading under the statute. *Id.*

In *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 937 (N.D. Cal. Apr. 17, 2009), the subject lines contained statements like "Your JCPenny 500 USD Gift Card!"; or "CONFIRMATION: We have your $100 Visa Gift Card ready to ship!"; or "[QUAR] You were chosen to receive a $500 JCPenney Gift Card!"; or "[QUAR] Your $500 JC Penney Holiday Gift Card Expiring Soon." In fact, the gifts were not free because the recipient had to, for example, make a purchase or open a new credit card in order to receive them. The actual requirements for participation were buried at the end of the email or on a separate internet page accessible only after the recipient provided certain personal information. Moreover, the email headers concealed or misrepresented who the messages were actually from. *Id*. As such, a reasonable person could be misled by the subject lines in light of the body of the emails.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

In *Hypertouch, Inc. v. ValueClick, Inc.,* 192 Cal. App. 4th 805, 837-38 (2nd Dist. 2011), the subject line was misleading because it stated "Get a FREE Golf Retreat . . ."; "Let us know your opinion and win a free gift card"; "which would you choose? Win a free gift card for letting us know." The body of the emails contained a link to a promotional website that required purchases, rather than doing a survey, to obtain a free gift card. The court explained that "[i]f a subject line creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act (such as opening the e-mail or participating in a single survey), and the content of the e-mail reveal that the 'gift' can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the e-mail." *Id*. at 838.

In *Rosolowski v. Zoosk, Inc.,* 2013 WL 974547 (Oct. 17, 2013), the subject line was misleading because it stated, "someone really wants to meet you"; "meet me on Zoosk"; "be my valentine." The body of the emails contained commercial advertising unrelated to any personal communications. A subject line that is unrelated to the content of the email, such as the subject lines in *Rosolowski*, is misleading under the statute.

Further, in the two cases where the courts found that emails *were not* misleading as a matter of law, the subject lines were far more ambiguous than the instant case. In *Rosolowski*, 230 Cal. App. 4th at 1416–17 , the subject line offered "free" or "complimentary" gifts, but the body email made clear that the free gift was conditional upon a purchase. This was not misleading because the court viewed the

"email's subject line in conjunction with the body of the e-mail, rather than in isolation." *Id.* As such, the court concluded the subject lines' offers of free gifts were not likely to mislead a recipient, acting reasonably under the circumstances, because the email body itself made it clear that a free gift was conditional upon a purchase. *Id.*

Similarly, in *Bontrager v. Showmark Media LLC*, 2014 WL 12600201 (C.D. Cal. June 20, 2014), the subject line stated "Lawyer Media, Top Lawyers in California" with body email advertising a Top Lawyer Recognition plaque. *Id.* at * 3. Although the plaintiff believed the email was an announcement of an award or recognition for him, the subject was not objectively misleading because the email did not assert anywhere that the recipient of the email himself won the top lawyer award. *Id.* at * 4.

Here, as April 25, 2024 Email shows, the subject line addressed exactly what was in the body of the email and was clearly not from Teamsters.

2. <u>The April 25, 2024 Email is not a commercial email advertisement because the Foundation is informing employees of their First Amendment rights and offering opt-out assistance free of charge.</u>

To be liable under Section 17529.5(a)(3), the defendant must send a "commercial e-mail advertisement" where the subject line "would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Section 17529.1(c) defines "commercial e-mail advertisement" as "any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

disposition of any property, goods, services, or extension of credit." The word "commercial," however, is not defined in the statute.

Plaintiffs' claim fails for three reasons. <u>First</u>, Plaintiffs fail to sufficiently allege that the April 25, 2024 Email was a "commercial email advertisement." <u>Second</u>, in reading the April 25, 2024 Email, it is clear that it does not offer anything "commercial." An email from the Foundation, a non-profit, surveying public employees about their experience as union members and offering to assist in resigning their union membership is not "commercial" in nature. <u>Third</u>, the Foundation  does not engage in "commerce" when informing employees of their First Amendment rights.

As to the first point, Plaintiffs have only one allegation to satisfy the "commercial email advertisement" element of Section 17529.5. In paragraph 45, Plaintiffs allege that the April 25, 2024 Emails were

> "'commercial e-mail advertisements' within the meaning of § 17529.1(c), intending to advertise the services of Defendant in providing assistance to union members in terminating their memberships by hosting a website which: (1) collects contact information and other data about the member; and (2) provides the member with opt-out instructions and customized opt-out forms for specific public-sector unions, which the member can either print or have Defendant mail to them." FAC, ¶ 45.

Even under the liberal pleading standard of Rule 8(a)(2), a plaintiff must provide more than mere labels, conclusions, and formulaic recitations of the claim's requisite elements. *Bell Atl. Corp.*, 550 U.S. at 555. Here, Plaintiffs fail to allege how or in what way the April 25, 2024 Email is a "commercial email advertisement."

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Plaintiffs simply cite the language of Section 17529.5 verbatim and make the circular claim that the email is a "commercial email advertisement" because it is a commercial email advertisement pursuant to the statute.

Even if Plaintiffs were to allege that the "service" the Foundation provides is "providing assistance to union members in terminating their memberships" by providing opt-out instructions and opt-out forms, the Foundation receives no commercial benefit from this. The term "service" in Section 17529.1(c) does not mean the offer of any service whatsoever. For example, an email that promotes a church service during Christmas or a free charity service of driving the elderly to their doctor's appointments would obviously not fall under the anti-SPAM statute but this "service" has no exchange as part of it. Because the Foundation does not receive anything from a union member if they opt out of union membership, the optouttoday.com website is not a commercial "service" under the statute. Ibarra Decl. ¶ 6.

As to the second point, because the word "commercial" is not defined in the statute, courts may "first examine the statutory language, giving it a plain and commonsense meaning." *Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*, 34 Cal.4th 733, 737 (2004). The meaning of a statute's terms may also be determined by consulting a dictionary. *See, e.g., People v. Farell*, 28 Cal.4th 381, 387-388 (2002).

In looking at dictionary definitions, the commonsense understanding accords with dictionary definitions and other legal sources. According to Webster's 3d New Int'l. Dictionary (2002) p. 456, "commercial" means "occupied with or engaged in

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

21

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

commerce" and "commerce" means "the exchange or buying and selling of commodities esp. on a large scale." The Oxford English Reference Dictionary (2d ed. 1996) p. 290 defines "commerce" as "financial transactions, esp. the buying and selling of merchandise, on a large scale," and Black's Law Dictionary (10th ed. 2014) p. 325 defines "commercial" as "[o]f, relating to, or involving the buying and selling of goods; mercantile."

The April 25, 2024 Email does not involve the "advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(c). The April 25, 2024 Email's purpose is to survey Teamsters members to learn about their experience with Teamsters. At best, the only "service" that is offered is a link to optouttoday.com, and this, in turn, is not commercial or financial in any way. The optouttoday.com website offers public employees an opportunity to opt out of union membership, if they so choose. Ibarra Decl. ¶ 7. This "service" is entirely free, does not benefit the Foundation financially in any way and does not involve "buying and selling of goods." *Id*. at 8. Therefore, informing public employees about their rights has nothing to do with any commercial transactions.

Lastly, the Foundation's "service" of assisting individuals in opting out of union membership is done for free and without any *quid pro quo*, and the Foundation is a non-profit that does not benefit financially from informing public employees of their First Amendment Rights. Ibarra Decl. ¶ 9. Moreover, looking at the case law on the anti-SPAM statute, there is not a single case of a non-profit sending emails about their "service," nor is there any case where the good or service was non-

Mot. to Dismiss Pursuant to
Cal. Code Civ. Proc. § 425.16

22

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

commercial in nature. As such, the April 25, 2024 Email cannot be construed as offering "a service," and is in no way commercial in nature. The anti-SPAM statute does not apply.

## V. CONCLUSION

Plaintiffs cannot state a claim for the anti-SPAM statute as a matter of law because the April 25, 2024 Email is neither misleading nor a commercial email advertisement. Accordingly, the Court should strike and dismiss the Plaintiffs' First Amended Complaint with prejudice, and award attorneys' fees and costs to the Foundation pursuant to California's anti-SLAPP law's mandatory attorneys' fees clause for prevailing defendants.

Respectfully Submitted,

Dated: October 22, 2024

s/*Shella Alcabes*
Shella Alcabes, Cal Bar No. 267551
salcabes@freedomfoundation.com
Ravi Prasad, Cal Bar 355175
rprasad@freedomfoundation.com
Freedom Foundation
P.O. Box 552
Olympia, Washington 98507
Tel: (360) 956-3482
Fax: (360) 352-1874

*Attorneys for Defendant*

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874