UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-01473-AH-(SHKx) | Date | January 30, 2025 |
| Title | *Levi Chin et al. v. Evergreen Freedom Foundation* | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 (27) AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) (28)

Before the Court are Defendant Evergreen Freedom Foundation's ("Defendant") Motion to Dismiss Plaintiffs Levi Chin and Teresa Preciado's ("Plaintiffs") First Amended Complaint ("FAC") pursuant to California Code of Civil Procedure § 425.16 (Dkt. No. 27) and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 28). The matter is fully briefed, and the Court heard oral argument on January 30, 2025. For the reasons below, the Court DENIES Defendant's Motions.

I. BACKGROUND

Plaintiffs are employees of San Bernadino County, California, and members of the Teamsters Local 1932 Union ("Teamsters"). FAC ¶ 13. Defendant operates an entity called "Opt Out Today." *Id.* ¶ 15. Plaintiffs allege that, on its website, Defendant "holds itself out as 'a battle tank that's battering the entrenched power of left-wing government union bosses who represent a permanent lobby for bigger government, higher taxes, and radical social agendas.'" *Id.* ¶ 16.

On April 25, 2024, Plaintiffs received an email to their work email accounts from "orlando@optouttoday.com." *Id.* ¶ 14. The subject line of these emails stated: "Your Experience with Teamsters – Your Voice Matters." *Id.* The body of the email reads:

Dear ,

I'll be quick and to the point.

The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues in to what they say is a union that does not really represent them. While they just might be disgruntled members, it is important to highlight that they chose to exercise their constitutional right to do so.

We here at OptOutToday.com are dedicated to informing and empowering those that are disenfranchised by their union. When a union, or any service for that matter, does not benefit you, why should you then have to cough up your hard-earned paycheck to them? Thanks to the Janus decision in 2018, you no longer have to and you have the right to stay in or leave your public sector union.

We are genuinely interested in hearing your side of the story. So, to those that have decided to opt out - what made you leave? Are there things that Teamsters could have done better? Ideally, what are the top 2 things you would like to see change.

On the flip side, to those that are still full dues paying members - why do you think some of your coworkers have left? Are you aware of your right to opt out of dues and save you money? What are somethings that Teamsters 1932 has done well?

If you're open to sharing your thoughts, we'd love to hear from you. Your feedback is not only important to us but could also be pivotal for many of your peers contemplating similar decisions.

Please feel free to reach out to us at your convenience or visit OptOutToday.com to know how you can opt out and start saving hundreds per year.

> Best,
> Orlando

*Id.* ¶ 14, Ex. A.

On July 15, 2024, Plaintiffs filed a Complaint against Defendant asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Compl., Dkt. No. 1. Plaintiffs filed the FAC on August 9, 2024. FAC, Dkt. No. 18. Plaintiffs allege that Defendant's emails violate California Business and Professions Code § 17529.5(a)(3). Defendants now bring two motions: (1) a Motion to Dismiss pursuant to California Code of Civil Procedure § 425.16 (Dkt. No. 27), and (2) a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 28).

## II.   LEGAL STANDARD

### A. California Code of Civil Procedure § 425.16

California's anti-SLAPP statute allows for pre-trial dismissal of "SLAPPs" ("Strategic Lawsuits against Public Participation"). Cal. Civ. Proc. Code § 425.16. The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Wilcox v. Superior Ct.*, 27 Cal.App.4th 809, 816 (1994).

California's anti-SLAPP statute permits a defendant to file a "special motion to strike" to dismiss an action before trial. Cal. Civ. Proc. Code § 425.16. Motions brought under the anti-SLAPP statute are evaluated in two steps. First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (citation omitted). Second, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.* (citations omitted). "The plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'" *Metabolife*, 264 F.3d at 840 (quoting *Wilcox*, 27 Cal.App.4th at 823).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030−31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545. A court may consider the allegations contained in the pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

### C. Federal Rule of Civil Procedure 12(b)(1)

A motion for lack of subject matter jurisdiction may be brought under Federal Rule of Civil Procedure 12(b)(1). The case or controversy requirement under Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be ripe for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (internal punctuation and citation omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal punctuation and citations omitted). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler*, 598 F.3d at 1122.

## III.   DISCUSSION

### A. Anti-SLAPP Step One

In applying the first step of the anti-SLAPP analysis, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). Under California Code of Civil Procedure § 425.16(e), an act qualifies as protected activity if it meets one of the following underlying categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

Defendant argues that Plaintiff's claim falls under section 425.16(e)(4). Plaintiff cites to *All One God Faith, Inc.*, which provides the following principles for defining "an issue of public interest." "First, 'public interest' does not equate with mere curiosity. Second, a matter of public interest should be something of

concern to a substantial number of people…Third, there should be some degree of closeness between the challenged statements and the asserted public interest… Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy.'" *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.,* 183 Cal.App.4th 1186, 1201–02 (2010) (quoting *Terry v. Davis Community Church*, 131 Cal.App.4th 1534, 1546-47 (2005)) (internal citations omitted).

Here, Defendant's speech meets these principles. First, Defendant argues that "the April 25, 2024 Emails are conduct in furtherance of the Foundation's advocacy concerning issues of public interest." Mot., Dkt. No. 27, at 8. Plaintiffs acknowledge that Defendant "on its website… holds itself out as 'a battle tank that's battering the entrenched power of left-wing government union bosses who represent a permanent lobby for bigger government, higher taxes, and radical social agendas.'" FAC ¶16. Second, the email focused on Teamsters union membership issues, which affects the Teamsters Local 1932 membership consisting of "approximately 14,000 public employees in California." FAC ¶ 13. Third, Defendant claims that the email was "related to its advocacy on matters of public concern" and "allegedly sent to public employees." Mot., Dkt. No. 27, at 9-10.  Plaintiffs alleged that Defendant directed the emails to Plaintiffs "for the purpose of pushing its political agenda in abolishing unions nationwide."  FAC ¶ 20. Fourth, the email requested input regarding satisfaction with union membership for the purported reason of helping union members. FAC ¶ 14, Ex. A.

Plaintiffs argue that, because there is "no live controversy" the email is not a matter of public concern. Opp'n at 4. Plaintiffs cite to *Du Charme* for the proposition that "in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." *Id.*; *Du Charme v. Int'l Bhd. of Elec. Workers*, 110 Cal.App.4th 107, 119 (2003).  However, the FAC itself alleges that the email was sent "for the purpose of pushing its political agenda in abolishing unions nationwide," FAC ¶ 20, which is an "ongoing controversy, dispute or discussion." *Du Charme*, 110 Cal.App.4th at 119.

Plaintiffs also cite to *Rivero* for the argument that "labor disputes do not automatically rise to the level of an issue of public interest." Opp'n at 5 (citing

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO*, 105 Cal.App.4th 913, 924 (2003)). In *Rivero*, "the only individuals directly involved in and affected by the situation were Rivero and the eight custodians." *Rivero,* 105 Cal.App.4th at 924. Here, the statements in the email concern membership in a union of approximately 14,000 public employees and were not limited to discussion about a situation involving a discrete or limited number of individuals.

Accordingly, Defendant's email qualifies as conduct "in furtherance of the exercise of the constitutional right … of free speech in connection with a public issue or an issue of public interest" under § 425.16(e). The Court therefore proceeds to the second step of the anti-SLAPP framework.

## B. Anti-SLAPP Step Two and Rule 12(b)(6)

Under the second step of the anti-SLAPP framework, Plaintiffs bear the burden of demonstrating a probability of prevailing on the merits of their claims. "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), amended by 897 F.3d 1224 (9th Cir. 2019). There is no dispute that the anti-SLAPP motion targets the legal sufficiency of Plaintiffs' claims.[1] Therefore, Plaintiffs' claims are analyzed under a 12(b)(6) standard.

Plaintiffs allege that Defendant sent an email with a subject line that violates California Business and Professions Code § 17529.5(a)(3). FAC ¶ 46. Section 17529.5(a)(3) makes it "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address [if]... [t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3).

### 1. Commercial Email Advertisement

---

[1] Although Defendant purports to raise an evidentiary-based argument to undermine Plaintiffs' probability of success for the first time in reply, the Court declines to consider arguments and evidence raised for the first time in a reply brief, as set forth in greater detail below.

The parties dispute whether the email is a commercial advertisement. "Commercial e-mail advertisement" is defined by Section 17529.1(c) as "any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(c). Plaintiffs allege that the "emails at issue were 'commercial e-mail advertisements' within the meaning of § 17529.1(c), intending to advertise the services of Defendant in providing assistance to union members in terminating their memberships by hosting a website which: (1) collects contact information and other data about the member; and (2) provides the member with opt-out instructions and customized opt-out forms for specific public-sector unions, which the member can either print or have Defendant mail to them." FAC ¶ 45.

Defendant argues that its free service cannot constitute a "commercial e-mail advertisement" because "the word 'commercial' always includes a financial benefit of some sort." Reply at 14. Defendant's argument also seems to conflate commercial speech with the definition of "commercial e-mail advertisement" that is provided in Section 17529.1(c). *See* Reply at 14-15; Cal. Bus. & Prof. Code § 17529.1(c). However, on its face, the statutory definition of the entire phrase "commercial e-mail advertisement" does not explicitly state that a financial benefit is required.

Plaintiffs allege that the "email advertises or promotes optouttoday.com's services, which is stated explicitly in the email as 'help to stop paying dues' by filling out the forms on the website in order to opt-out of their public sector union." FAC ¶ 14. Here, the message is encouraging recipients to "reach out" and promoting OptOut's website, which Defendant itself admits is a "service" even if it is free of charge. Reply at 15. Plaintiffs have sufficiently alleged facts that Defendant's email was an "electronic mail message initiated for the purpose of advertising or promoting the… other disposition of any…services" Cal. Bus. & Prof. Code § 17529.1(c).

### 2. Likely to Mislead a Recipient

A commercial email advertisement is in violation of Section 17529.5(a)(3) if it "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the

contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3).

Plaintiffs allege that the "emails specifically misrepresented a material fact regarding the contents and/or subject matter of the email under § 17529.5(a)(3) in that the subject line appeared on its face to be endorsed or solicited by the Teamsters, when in fact the email actually is intended to advertise the Defendant's website services in providing instructions and forms for the union member to opt-out of their membership with the Teamsters." FAC ¶ 47. The emails contained a subject line with the words "Your Experience with Teamsters – Your Voice Matters." FAC ¶ 14. The email was sent from an email address with an "optouttoday.com" email address and contained the phrase "[w]e here at OptOutToday.com" in the body of the email. FAC ¶ 14, Ex A.

Plaintiffs cite to *Hypertouch* while Defendant cites to *Rosolowski* for the operative test to evaluate Section 17529.5(a)(3). *See* Opp'n at 8-9, Mot., Dkt. No. 27, at 18. In *Hypertouch*, the California Court of Appeal held: "If a subject line creates the impression that the content of the email will allow the recipient to obtain a free gift by doing one act (such as opening the email or participating in a single survey), and the content of the email reveals that the 'gift' can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the email." *Hypertouch Inc. v. ValueClick Inc., et. al.*, 192 Cal.App.4th 805, 838 (2011). As recognized by *Asis Internet Servs. v. Subscriberbase Inc.*, "Section 17529.5(a)(3) does not turn on whether a subject line is true or false, taken in the context of the email as a whole or in light of a hyperlinked page. It asks a very different question: whether the subject line might in fact lead a reasonable person to expect something materially different than the message's actual content or subject matter." *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010).

*Rosolowski*, rejected *Hypertouch*'s reasoning with regard to subject lines: "Unlike *Hypertouch*, we view an email's subject line in conjunction with the body of the email, rather than in isolation. We conclude the subject lines' offer of a free gift was not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact . . . because the email advertisements made it clear that a free gift was conditional upon a purchase." *Rosolowski v. Guthy-Renker LLC*, 230 Cal.App.4th 1403, 1418 (2014). *Rosolowski* does not explain what is meant by considering the subject line in conjunction with the body of the email,

when the statute itself defines the violation as having a subject line that would mislead about the contents of the message.

      Moreover, in *Rosolowski*, the subject line, "Exclusive WEN Deal: Complimentary Shipping", was not likely to mislead because the subject line aligned with the content of the email. *Id.* at 1409. Free shipping was in fact being offered, as stated in both the subject line and the body of the email. *Id.* ("The e-mail text which emerges if one clicks to open, show that 'free shipping' is offered for an e-mail saying so in the Subject line, that free shipping and a tube of Proactive Oil Free Moisture is offered for an e-mail saying so in the Subject line, and that free shipping and two free gifts are offered when the Subject line says 'Get 33% More with New Wen Hair Care System plus Two Free Gifts and Free Shipping' The same is true as to the others presented, and no e-mail is so simple as to merely offer a 'Free Gift' with nothing further said."). Based on the facts presented in that case, *Rosolowski* does not stand for the proposition that the body of the email can cure anything misleading in the subject line. Rather, the issue in that case was whether the subject line accurately conveyed the body of the email. That is not the issue here, so *Rosolowski* does not support Defendant's position that a misleading subject line is not actionable just because the body of the email does not mislead as to what is being offered. Mot., Dkt. No. 27, at 11.

      Here, Plaintiffs allege that the subject line of the email is misleading. "[W]hether a statement is likely to deceive a reasonable consumer is generally a question of fact." *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal.App.4th 805, 839 (2011) (internal quotations and citations omitted). A defendant has the "relatively heavy burden of persuading this Court that no reasonable fact finder could conclude that the email subject lines were 'likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.'" *Asis*, 2010 WL 1267763, at *3 (quoting Cal. Bus. & Prof. Code § 17529.5(a)(3)). Plaintiffs argue that the subject line in its entirety is likely to mislead because there is "no indication that the Email was sent from an outside organization instead of the Teamsters." Opp'n at 9. Plaintiffs have sufficiently established at this stage that a reasonable trier of fact could find that the subject line was likely to mislead a recipient into thinking the email was from Teamsters or a group affiliated with Teamsters, not a union opposition group. Therefore, even under *Rosolowski*, Plaintiffs have plausibly alleged that the email contained a subject line that was likely to mislead a recipient acting reasonably under the circumstances.

Defendant argues for the first time in reply that "neither Plaintiff was actually misled by the April 25, 2024 Email." Reply at 8. "[D]istrict court[s] need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted); *see also FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply."). Even if the Court were to consider this argument, the standard is whether "a person knows [the subject line] *would be likely to mislead a recipient*" not whether the Plaintiffs must prove that they were actually misled. Cal. Bus. & Prof. Code § 17529.5(a)(3) (emphasis added).

Accordingly, the Court denies Defendants' anti-SLAPP Motion to Dismiss pursuant to California Code of Civil Procedure § 425.16 and Motion to Dismiss pursuant to Rule 12(b)(6).

## C. Rule 12(b)(1)

Defendant argues that Plaintiffs have not alleged an economic injury-in-fact and therefore the FAC should be dismissed under Rule 12(b)(1).

Defendant cites *Blanchard* for the proposition that "because plaintiffs did 'not allege any facts to support a finding that they have incurred an injury from their receipt of the challenged emails,' plaintiffs lacked Article III standing." Mot., Dkt. No. 28, at 5 (citing *Blanchard v. Fluent LLC*, 2018 WL 4373099, at *2 (N.D. Cal. Sept. 13, 2018)). However, *Blanchard* is contrary to cases decided by this district. This district has held that an "allegation that [Plaintiffs] suffered violations of [their] statutory rights pursuant to Cal. Bus. & Prof. Code § 17529.5 suffices to satisfy the concreteness requirement of Article III standing." *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at *9 (C.D. Cal. Nov. 5, 2018). The Court agrees that "[t]he substantive right § 17529.5 is protection from unwanted spam emails – not necessarily protection from financial harm. An economic injury would be sufficient to show an injury in fact, *but it is not necessary*." *Lynch v. AML Network Ltd.*, 2021 WL 4453470, at *4 (C.D. Cal. Sept. 27, 2021) (emphasis added). The Court finds the cases of this district persuasive to establish that Plaintiffs' allegations of Section 17529.5 statutory violations are injuries in fact sufficient to confer Article III standing.

Additionally, Defendant cites cases that concern consumer protection laws and are inapplicable to Section 17529.5. *See* Mot., Dkt. No. 28, at 5-6. *Reid* was a

consumer class action that required economic injury in-fact for standing as it pertains specifically to California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"). *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ("To establish standing to bring a claim *under these statutes*, plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution.") (emphasis added); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (consumer class action requiring economic injury under UCL and FAL). "The statutes at issue there are *consumer* protection laws, which of course require that a plaintiff be a consumer and have 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.' The provision at issue in this case is not so limited: a purchase is not a prerequisite to suffering the harms of spam emails detailed in § 17529. In this same vein, Plaintiffs' argument also fails because it misidentifies the injury." *Lynch,* 2021 WL 4453470, at *4 (citation omitted).

Finally, whether Plaintiffs own the emails is immaterial, so the Court need not consider Defendant's request for judicial notice. *See* Request for Judicial Notice, Dkt. No. 29. Regardless of the ownership over the email domain, the emails were addressed to Plaintiffs' individual email addresses. Therefore, Plaintiffs are the respective recipients for the purposes of Section 17529.5(b), which defines "recipient" as "addressee of an unsolicited commercial e-mail advertisement." Cal. Bus. & Prof. Code § 17529.1(m).

Accordingly, the Court denies Defendant's Motion to Dismiss pursuant to Rule 12(b)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' Complaint pursuant to Cal. Code Civ. Proc. § 425.16 (Dkt. No. 27) and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 28).

**IT IS SO ORDERED.**